Mackey v. Sheldrick, No. 608-9-11 Rdcv (Teachout, J., Dec. 14, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 608-9-11 Rdcv** |

**NEIL MACKEY and**
**KATHY MACKEY,**
    **Plaintiffs**

v.

**DANIEL SHELDRICK, and**
**JESSICA SHELDRICK,**
    **Defendants**

### DECISION
### Findings of Fact and Conclusions of Law

This matter came before the court for final hearing in this eviction case on November 30, 2011. Plaintiffs were present and represented by Attorney Benjamin H. Deppman. Defendants were present and represented themselves.

Plaintiffs seek eviction based on nonpayment of rent. Defendants have counterclaimed based on illegal discrimination and condition of the premises. Based on the credible evidence, the Court makes the following Findings of Fact and Conclusions of Law, and issues a separate Judgment.

### Findings of Fact

The rented property at issue in this case is an apartment in Brandon located downstairs from a business operated by Plaintiffs. The apartment was originally rented by a different tenant, and Daniel Sheldrick moved in with her. At some point she left, and Daniel remained as the tenant under an oral lease. He has been renting the apartment for approximately seven years. In 2009, Jessica Sheldrick moved in, and has been cotenant since. Plaintiffs and Daniel had a rather casual, flexible landlord-tenant relationship. Daniel occasionally made minor repairs and deducted the cost for the rent. Plaintiffs were obliged to do an annual inspection by Brandon, but Kathy Mackey usually just brought the form to the door and Daniel signed it. Plaintiffs only occasionally had the fire extinguisher retagged, although there was a requirement to do so annually. At some point, Daniel got behind in rent, and Kathy told him to catch up as he could, which he did.

There were a few issues related to the condition of the property that were brought up during this case. Since the time Daniel moved in, there has been a broken window, but it is one of two panes, and the second pane is intact. Although it may have been mentioned in the past at some point, it had not been brought up as an issue by Daniel or Jessica over a period of years.

Jessica at one point told Kathy that there was mold under the shower stall in the bathroom. She said, "Can't Dan fix it?" There is no evidence that the tenants agreed to do so, nor is there any evidence that tenants ever told the landlords that they did not fix it.

Applicable ordinances required a hardwired smoke detector. The one the landlords provided was not hardwired. In 2010 Daniel purchased a hardwired one for $25 and installed it himself. He has never taken a credit for it off rental due.

The inspection on the fire extinguisher is not up to date. Kathy testified that she "assumed" that Daniel took care of that himself. Daniel testified, and the court finds, that there was no specific agreement whereby he accepted that responsibility.

There is an exterior door that needs sealing. No notice was given to the landlords about that prior to this lawsuit.

Prior to May 1, 2011, the tenants were up to date in rent. The rent payment of $550 due May 1st was not paid. Daniel contacted Kathy and said that he had lost his job, and she told him to pay when he could, as had been done in the past.

In May Daniel was arrested and sent to the Vermont State Hospital in Waterbury for evaluation in connection with mental illness. The June 1st payment was not made. In early June, Daniel was diagnosed with a mental illness.

On June 24th, the landlords sent a Notice of Termination based on the failure to make the May and June payments, and specifying July 14, 2011 as the termination date if arrears were not paid. As provided by law, the Notice stated: "In the event that you pay all of the arrearages in the amount of $1100 prior to the termination date, you may remain at the premises."

On June 25th, Jessica received the Notice and contacted Kathy and told her that Daniel was in jail and had a mental illness, and that she could not afford the rent and would be looking to move to another place.

The weekend of July 2-4, Kathy made numerous telephone calls to the residence, as she wished to show it to a prospective tenant. In the meantime, Daniel was going to be getting out of jail and Jessica had decided to stay with Daniel and they wanted to stay in the apartment. Jessica asked Kathy to sign a shelter assistance form, which would enable Jessica to obtain state funds to pay the back rent, up to 3 months, and stay in the apartment. Kathy refused to do so, and said she would no longer rent to Daniel because of his mental illness, and that she preferred to part ways. She said that she could not run a business on the premises with Daniel there, and that she would rent to Jessica and her son but not to Daniel. Kathy said that she could not believe that Jessica was going to stay with Daniel, and then she said that she shouldn't have said that.

On Tuesday, July 5th, Daniel got out of jail and called Kathy and said they wanted to get caught up. Kathy refused, and said she was unwilling to accept any payments or make any agreements, and that she wanted to part ways.

2

The case was filed on September 6th. A rent escrow hearing was held on September 28th, providing for payment for most of the September rent and rental payments into court while the case was pending. Timely rental payments have been made into court for the months of September, October, November, and December. Rent remains unpaid for May, June, July, and August.

**Conclusions of Law**

There is no dispute that the tenants owe landlords $2,200 in rent for the months of May, June, July, and August. They also owe a shortfall amount for September of $550 – 408.06 (paid in escrow) = $141.94. The total in unpaid rent is $2,341.94.

Tenants are entitled to a credit of $25 for the hard-wired smoke detector they purchased, making a net amount due of $2,316.94.

As a result of this case, the landlords now have notice of the mold and the fire extinguisher issues, which are safety issues affecting habitability, and they have a reasonable amount of time to make repairs. 9 V.S.A. § 4458. The tenants did not provide sufficient notice of these issues to justify the right to withhold payment of rent starting May 1st.

The window pane and door seal issues are not matters that would support withholding of rent based on violation of the warranty of habitability. Tenants may request landlords to make those repairs, or make the repairs themselves and deduct the cost from rent. 9 V.S.A. § 4459.

As of June 24th, the date of the Notice of Termination, landlords had the right to terminate the tenancy for nonpayment of rent, and they did so properly according to law, specifying a termination date of July 14th. They had no obligation or duty to negotiate a payment plan with tenants. They also had no legal obligation to sign a shelter assistance form.

However, during the period in which the tenants were entitled to pay the arrears, the landlords specifically stated that they would no longer rent to Daniel because he had a mental illness, and that they would not accept payments of arrears that tenants had a right to make. While the tenants did not formally tender the money, they were seeking to do so, and the landlord specifically stated that she would not accept payments, making any actual presentation of the money futile. The Court concludes that in stating that they would not accept arrears payments because of Daniel's mental illness, the landlords discriminated against the tenants in violation of 9 V.S.A. § 4503(2), which makes it unlawful to discriminate against any person with a handicap in relation to the rental of a dwelling. A handicap includes a mental illness under 9 V.S.A. § 4501 (2)(A) and (3)(B).

A person aggrieved by housing discrimination may "bring an action for injunctive relief and compensatory and punitive damages and any other appropriate relief in the superior court of the county in which the violation is alleged to have occurred." 9 V.S.A. § 4506 (a). It would be unjust to deprive the landlords of the rent to which they are entitled, and therefore the Court does

3

not grant any money remedy to the tenants that would be a setoff to the unpaid rent due the landlords. The only reasonable remedy available under these circumstances is denial of the landlords' request for possession. Therefore, the Court will issue a money judgment for the unpaid rent, but provide as an enforcement remedy for the discrimination the denial of the right to possession based on the unpaid rent at issue in this case.

It should be clarified that in the event of a future failure to pay rent, the landlords would then be entitled to seek termination of the tenancy with possession as a remedy. Furthermore, landlords would be entitled to terminate the tenancy for no cause in the future, and seek the remedy of possession. The enforcement remedy granted to the tenants on their counterclaim in this case is a denial of possession based only on the unpaid rent involved in this case, which is rent for the period from May 1 to September 9, 2011.

For the foregoing reasons, the Court has issued a judgment consistent with these terms.

Dated at Rutland, Vermont this 13th day of December, 2011.


_____
Hon. Mary Miles Teachout
Superior Judge

SUPERIOR COURT                                    CIVIL DIVISION
Rutland Unit                                      Docket No. 608-9-11 Rdcv

NEIL MACKEY and
KATHY MACKEY,
        Plaintiffs

v.

DANIEL SHELDRICK, and
JESSICA SHELDRICK,
        Defendants


## JUDGMENT

This matter came before the court on November 30, 2011 for final hearing in this eviction case.   Based on evidence and Findings of Fact and Conclusions of Law set forth in the Decision issued this day,

**IT IS HEREBY ORDERED:**

1.  Plaintiffs are entitled to the sum of $2,058.06 which has been paid into Court as rent held in escrow for rent from September 9, 2011 through December 31, 2011.  The Court Clerk shall transfer these funds to the Plaintiffs.

2.  In addition, Plaintiffs are entitled to Judgment in the amount of $ $2,316.94 in unpaid rent, $262.50 for filing fees, and $242.93 for service costs for a total Judgment of $2,822.37.

3.  As a remedy on the Defendants' counterclaim, Plaintiffs' claim for possession is denied and Defendants are entitled to remain in possession of the premises.

Dated at Rutland this 13th day of December, 2011.

                                    _____
                                    Hon. Mary Miles Teachout
                                    Superior Judge

5